**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| TAMARA WHITE<br><br>         Plaintiff,<br><br>             v.<br><br>JAMES CLEARY et al.<br><br>         Defendants. | Civil Action No. 09-4324 (PGS)<br><br><br>**MEMORANDUM & ORDER** |

**SHERIDAN, U.S.D.J.**

This matter comes before the Court by Defendants', James Cleary, Andrew Teeple, and Anthony DeOrio as individuals and employees of Monmouth Regional High School District ("Monmouth Regional High"), and Monmouth Regional High School District on a motion for summary judgment.  The plaintiff, Tamara White, alleges in her second amended complaint that she was certain varsity cheerleading coach positions, and subjected to a hostile work environment and retaliation due to sex discrimination.  The plaintiff alleges the following causes of action in her complaint: (1) hostile work environment as a result of sex discrimination in violation of Title VII under 42 U.S.C. 2000e and  New Jersey Law Against Discrimination (New Jersey LAD); (2) First Amendment retaliation claim under  42 U.S.C. § 1983; (3) an Equal Pay Act claim under 29 U.S.C. § 206; and (4) Title VII and New Jersey LAD retaliation.

## I.      BACKGROUND

Only the facts relevant to the court's analysis will be recited.  In July 1995, the plaintiff was hired to teach social studies at Monmouth Regional High, which was her first job as a teacher.  That fall in November 1995, plaintiff was offered the varsity cheerleading coach position in addition to her teaching responsibilities and was told that it would be "a babysitter's job" as she could do her lesson plans and grade papers while coaching.  The plaintiff accepted the offer and began to coach cheerleading in December 1995 for the winter season.  Although cheerleading was recognized as a sport and stipends were paid according to the coach salary guide, plaintiff claims she was paid less than male coaches, and the cheerleading squad received less funding in comparison to male sports teams.  Defendants note that the cheerleading coach is a non- tenured position.  Plaintiff also alleges that then Athletic Director, Mike Luccarelli[1], undermined the importance of her role as a coach by referring to her  as a "club advisor" as opposed to a coach of a varsity sport.  Plaintiff asserts that she first complained about the inequity in pay for coaches and funding in November 2003, but was told by three men: Mike Luccarelli, James Cleary, then Business Administrator, and Anthony DeOrio that she complained too much.

In addition to plaintiff's allegations of inequality in the school's athletic department, plaintiff also asserts that she was sexually harassed by Mr. Luccarelli.  Plaintiff asserts that on several occasions he would call her into his office, and ask her to turn around and comment that she looked like she lost weight.  Plaintiff further asserts that he would often stand close and touch her arm when speaking to her and on at least one occasion he pinched her cheek when she had acne and indicated that she was probably not getting enough sex from her husband.  Plaintiff notes that Mr. Luccarelli

---

[1]        Mr. Luccarelli is not a named defendant in this case.

had a reputation for engaging in sexual harassment, but the school administration took no action. Plaintiff did not provide a time frame for when any of these incidents occurred.

Plaintiff further describes several incidents that occurred during and after her tenure as the varsity cheerleading coach that forms the basis for her claims.  The  plaintiff asserts that she recommended to then Principal, Dr. George, that Ms. Verdee, the fall JV cheerleading coach, should be fired at the end of the fall 2002 season because of her lack of commitment to coaching. Specifically, plaintiff asserts that Ms. Verdee allowed the JV team to miss games, did not want the varsity and junior varsity teams to practice together, and was inattentive to the girls during practice. According to plaintiff, Dr. George indicated that he would address Ms. Verdee's behavior if plaintiff documented her complaints.  Plaintiff documented that Ms. Verdee cancelled practice approximately 36 times during the fall.  As a result, Ms. Verdee was fired as the junior varsity cheerleading coach, but plaintiff notes that Ms. Verdee was later rehired.

A second incident occurred in the fall of 2003.  The plaintiff disciplined certain members of the cheerleading team for missing a school game, because they unilaterally decided to coach a Pop Warner midget cheerleading event that was scheduled for the same time.  Several parents complained about the discipline and one girl quit the cheerleading team, but the school administration supported the plaintiff's decision.  In spring 2004, the parents of the cheerleaders who were disciplined requested that the Board of Education ("Board") review the situation.  After a hearing, the Board took no action against plaintiff and she remained the varsity cheerleading coach.

A third incident occurred in January of 2005 when the plaintiff disciplined a cheerleader for participating at one of the games despite being instructed to sit on the sidelines because of a hand injury.  Plaintiff asserts that in her absence, Mr. Luccarelli allowed the injured cheerleader to cheer

at the game, but while sitting.  At the next game, plaintiff prevented the cheerleader from participating.  At this next game, plaintiff alleges that the injured cheerleader's mother deliberately used her shoulder to "hit" plaintiff's shoulder in the hallway during halftime.  However, there was no physical injury requiring treatment.  When plaintiff reported the incident to Mr. Luccarelli, he replied that he heard the plaintiff had actually hit the mother, and also expressed "do you know how many people want you fired?"  Plaintiff also called Mr. Teeple, who was not at the game, to report the incident.  Plaintiff asserts that Mr. Teeple expressed concern and advised her to file an incident report at the local police department.  Thereafter, plaintiff filed a grievance against Mr. Luccarelli (for lack of support), which was later withdrawn, and also filed an incident report at the police station to ensure that the facts would be on the record.   The incident was addressed during a meeting with plaintiff, who brought a union representative, and Mr. Teeple, who was the Principal, Mr. Luccarelli, and Mr. Collum, who was the Superintendent.  At the meeting, plaintiff argued that Mr. Luccarelli was giving preferential treatment to the family of the injured cheerleader, and she also sought to have the mother of the injured cheerleader banned from attending future home games. After failing to obtain any support from Mr. Luccarelli, plaintiff attempted to cultivate support from other coaches to sign onto a "no confidence" letter of grievance against Mr. Luccarelli.

By April 2005, plaintiff received a letter from Mr. Luccarelli that stated she would not be recommended as the varsity cheerleading coach the next school year because of four reasons:  (1) not attending the annual fall coaches meeting in 2004, and not providing a reason for the absence; (2) not informing the Athletic Director of two absences in January 2005; (3) driving separately, as opposed to taking the bus with the team, to two away games without prior administrative approval; and (4) limiting the cheerleaders from participating in other extracurricular activities in order to

make cheerleading an exclusive activity, which was against the school's policy.  At that time, plaintiff resigned from coaching in spring 2005 in exchange for the following three concessions from the school: (1) a positive evaluation as a coach instead of a negative evaluation (plaintiff notes that she never received a negative evaluation while she was a coach); (2) a recommendation from the school regarding her good performance as a teacher and as a coach for building a competitive cheerleading squad; and (3) the school would not retaliate against her if she sought employment with another school district.

In spring 2006, plaintiff reapplied for the fall 2007 varsity cheerleading coach position because her prior resignation did not prohibit her re-application.  At that time, Mr. Luccarelli retired and Mr. DeOrio was hired as Athletic Director.  The plaintiff was not hired as the varsity cheerleading coach, and Ms. Russo, who was a cheerleading coach for the 2005/2006 season, was re-hired as the varsity cheerleading coach for fall 2007.

The plaintiff also applied and was interviewed for the varsity cheerleading coach position for the winter 2007 season because Ms. Russo was pregnant and would be on maternity leave.  Plaintiff alleges that several days after the interview, Mr. DeOrio informed her that the current coaches would finish the school year, but plaintiff would be hired for the 2008/2009 season when the position would be changed to include both the fall and winter season.  Plaintiff also asserts that she had a conversation with Mr. Teeple who confirmed that she would be the varsity cheerleading coach next fall, and the interview in the spring was only a formality.  Plaintiff asserts that after these conversations she sent Mr. DeOrio, Mr. Cleery, and Mr. Teeple an email thanking them for the 2008/2009 cheerleading coach position.  In response, Mr. DeOrio sent an email to plaintiff clarifying that the coaching position was not promised to her, and it would be advertised as usual, at which

5

time she is welcome to apply again.

In fall 2007, plaintiff also notes that she applied to be an affirmative action officer within the school district.  Plaintiff was denied the position in favor of another teacher who had one year experience in teaching while plaintiff had thirteen years of teaching experience.

In Spring 2008, plaintiff applied and interviewed for the 2008/2009 varsity cheerleading coach position.  Plaintiff was denied the job.  As a result of the denial,  plaintiff requested a meeting with Mr. DeOrio, Mr. Clearly, Mr. Teeple and Robert Merola, then president of Monmouth Regional High's teachers' union.  At the conclusion of the meeting, plaintiff asserts that Mr. Cleary yelled that if she did not like their decision then she should consult with a lawyer.  Plaintiff notes that the job posting expressly stated that it would not be a competitive cheerleading program.  Plaintiff asserts that the position was deliberately advertised to discourage plaintiff from applying for the job because the administration knew of her desire to build a competitive cheerleading program.  Plaintiff alleges that she was ultimately denied the job because of her complaints regarding unequal pay and lack of funding for the cheerleading program and female athletic programs overall.  In June 2008, plaintiff asserts that she attended a Board of Education meeting to voice similar complaints about the disparate treatment towards the cheerleading team in terms of unequal pay for coaches and funding. In July 2008, plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC).  Mr. Cleary certified  that the reasons for not having a competitive cheerleading program were because of insurance and finance concerns.  Mr. Cleary further certified that in his seventeen year tenure at Monmouth Regional High there has never been an issue raised as to a Title IX violation.  Mr. Cleary also stated that coaching salaries are contractual and reached by agreement between the Board of Education and Monmouth Regional Education Association.

In spring 2009, the fall 2009 cheerleading coach position was posted, but plaintiff did not apply for the position.  In August 2009, plaintiff filed a discrimination complaint against defendants in this Court.  In December 2009, the assistant cheerleading coach position for the 2009/2010 season was re-posted and plaintiff applied for the job.  Plaintiff was not selected for the position, and has maintained this suit against defendants.

## II.    DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists.  *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985).  The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial.  *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express,*

*Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995).  "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fidelity Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial").  Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgement. *Anderson*, 477 U.S. at 247-48.  If a court determines, "after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in his favor – that no reasonable jury could find for him, summary judgment is appropriate." *Alevras v. Tacopina*, 226 Fed. Appx. 222, 227 (3d Cir. 2007).

### B.    Plaintiff's Title VII Claims

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against, any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  New Jersey LAD provides that "[a]ll persons shall have the opportunity to obtain employment . . . without discrimination because of race, creed, color, national origin, ancestry, age . . . sex . . . .   This opportunity is recognized as and declared to be a civil right."  N.J.S.A. 10:5-4.

Plaintiff argues under various Title VII and New Jersey LAD theories that because of sex discrimination she was subjected to a hostile work environment and was denied the affirmative action officer position and cheerleading coach positions from the 2007/2008 season through the 2009/2010 season.  However, this Circuit has held that Title VII claims cannot be brought against individual employees. *Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1077-78 (3d

8

Cir. 1996).  The statute provides that only employers with fifteen or more employees may be held liable.  *Id.*; 42 U.S.C. § 2000e-2(a); (b).  Accordingly, plaintiff's Title VII claims against Mr. Cleary, Mr. Teeple, and Mr. DeOrio individually must be dismissed as a matter of law.  Plaintiff's Title VII claims only remain against Monmouth Regional High as the employer.   New Jersey LAD claims for hostile work environment, like Title VII claims, also limit liability against an employer.  N.J.S.A. § 10:5-12(a).  Individual employees may be held personally liable for New Jersey LAD claims under an aiding and abetting theory where a supervisory employee aids and abets an employer's violation of the Act.  N.J.S.A. § 10:5-12(e); *Hurley v. Atlantic City Police Dept.*, 174 F.3d 95, 125-26 (3d Cir. 1999).  Here, plaintiff has not specifically pled an aiding and abetting theory and therefore the New Jersey LAD claims against Mr. Cleary, Mr. Teeple, and Mr. DeOrio must be dismissed as a matter of law and may only proceed against Monmouth Regional High as the employer.

### 1.      Hostile Work Environment

A hostile work environment occurs when unwelcome sexist conduct unreasonably interferes with an employee's performance or creates an intimidating, hostile, or offensive working environment.  *See Meritor Savs. Bank FSB v. Vinson*, 477 U.S. 57, 65 (1986); *Weston v. Pennsylvania*, 251 F.3d 420, 425-26 (3d Cir. 2001).  To establish a *prima facie* hostile work environment claim under Title VII the plaintiff must prove: (1) the employee suffered intentional discrimination because of her sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of *respondeat superior* liability.  *Bonenberger v. Plymouth Township*, 132 F.3d 20, 25 (3d Cir. 1997).

To fall within the scope of Title VII, the conduct complained of must be severe and pervasive

enough so that the employee subjectively feels that the work environment was hostile or abusive and objectively, a reasonable person would also find that work environment to be hostile or abusive. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993), *aff'd by Faragher v. City of Boca Raton*, 524 U.S. 775, 783 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753 (1998). A court must examine the circumstances to determine if a work environment is hostile or abusive. These circumstances may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

Defendants argue that plaintiff's hostile work environment and gender discrimination claims should be dismissed as a matter of law because her factual allegations are based on "perception, speculation, and suspicion" and are insufficient to support her claims. Applying the elements of a hostile work environment claim to the present matter, the plaintiff has failed to establish a *prima facie* case. After viewing the facts in the light most favorable to the plaintiff, the plaintiff has not provided any factual assertions of intentional discrimination by defendants Mr. White, Mr. Cleary, or Mr. DeOrio to satisfy the first element. Plaintiff makes generalized statements that female employees who were outspoken were subject to harassment. Plaintiff also references two remarks by Mr. Cleary when he stated that she complained too much, and on a separate occasion that she should consult with a lawyer. These remarks can be classified as "mere offensive uterrance[s]" and do not rise to the level of physically threatening or humiliating. *Harris*, 510 U.S. at 23. Plaintiff has also failed to show how this alleged verbal harassment was motivated by gender discrimination. As it relates to gender, "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discrimination ... because of ... sex.'" *Oncale v. Sundowner*

10

*Offshore Servs.*, 523 U.S. 75, 80 (1998).  Without a factual basis of intentional discriminatory conduct, the court need not address the remaining elements.  Thus, plaintiff's Title VII hostile work environment claim against Monmouth Regional High must be dismissed.

To establish a hostile work environment claim under New Jersey LAD, the elements are similar to the elements required under Title VII.  *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001); *see also Schurr v. Resorts Int'l Hotel, Inc.*, 196 F.3d 486, 498 (3d Cir. 1999) ("Analysis of a claim made pursuant to the NJLAD generally follows analysis of a Title VII claim.").  Therefore, the plaintiff's hostile work environment claim under New Jersey LAD fails for the same reasons as her Title VII claim.

### 2.    Sex Discrimination- Disparate Treatment

The plaintiff also argues, but does not specifically plead, that the reason she was denied the cheerleading coach position was because of sex discrimination in violation of Title VII.  Defendants argue that plaintiff has failed to establish sex discrimination under the *McDonnell Douglas* burden-shifting analysis.  Under *McDonnell Douglas* the analysis requires three steps.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) and later clarified in *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981), and *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993).    First, plaintiff must establish a *prima facie* case of discrimination.  *McDonnell Douglas*, 411 U.S. at 802.  To establish a *prima facie* case of sex discrimination under a disparate treatment theory, the plaintiff must demonstrate (1) he or she is in a protected class; (2) qualified for the position; (3) subject to an adverse employment action; and (4) the adverse employment action occurred under circumstances that could give rise to an inference of intentional discrimination.  *Makky v. Chertoff*, 541 U.S. 205, 214 (3d Cir. 2008).  At this stage of the analysis, plaintiff's evidentiary burden is "rather modest"

11

as the plaintiff only needs to demonstrate that "discrimination could be a reason for the employer's action." *Marzano v. Computer Sci. Corp.*, 91 F.3d 497, 508 (3d Cir. 1996).

Discrimination may be inferred when a similarly situated employee who is not within the protected class was treated more favorably. *See. e.g., Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 413 (3d Cir. 1999). However, a plaintiff is not required to show that the employer hired someone else who is not within the protected class, because "even if a woman is fired and replaced by another woman, she may have been treated differently from similarly situated male employees." *Pivirotto v. Innovative Systems, Inc.*, 191 F.3d 344, 353-54 (3d Cir. 1999). For example, a female employee may be discharged for making a single mistake while a male employee may not be discharged despite making numerous mistakes, but the female employee is replaced by another female who is expected to meet a biased standard. *See id.* at 355.

Once the plaintiff establishes the *prima facie* case for discrimination, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. The burden then shifts back to the plaintiff to establish by a preponderance of evidence that the employer's articulated reason was a pretext for discrimination. *Id.*; *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003). To defeat summary judgment, the plaintiff must demonstrate "some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. *Fuentes*, 32 F.3d at 764.

In evaluating the facts in the light most favorable to the plaintiff, the plaintiff has not established a *prima facie* case for sex discrimination. For the first element, it is undisputed that

12

plaintiff is within a protected class as a female.  *See, e.g., Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 (3d Cir. 2006).  As to the second element, plaintiff was qualified for the available cheerleading coach position due to her ten years prior experience as the varsity cheerleading coach from fall 1995 to spring 2005 at Monmouth Regional High.  As to the adverse action, plaintiff alleges she was forced to resign in spring 2005 as the varsity cheerleading coach and was no longer hired as a cheerleading coach for the 2007/2008 season through the 2009/2010 season.  As to the fourth element, an inference of intentional sex discrimination cannot be drawn from the facts plaintiff has alleged.  First, plaintiff has alleged no facts of similarly situated male coaches who were treated more favorably.  The employer also provided four reasons as to why plaintiff would not be recommended for the coaching position.  These reasons, which were based on attendance and violations of administrative policies, were legitimate and non-discriminatory.  Additionally, the statements defendants allegedly made that plaintiff complained too much or that she should consult a lawyer do not give rise to an inference of intentional sex discrimination.

Defendants argue that "[t]he plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994).  Mere dislike also does not necessarily rise to the level of discrimination unless the disparate treatment is motivated by discrimination.  *See Baker v. City of Phila.*, 405 Fed. App'x 599, 602 (3d Cir. 2010). Since plaintiff is unable to show that the employer's adverse employment action was motivated by discrimination, she has failed to establish a *prima facie* case and her sex discrimination based on disparate treatment claim must be dismissed as a matter of law.

### 3.    Retaliation

Plaintiff has also raised a retaliation claim in violation of Title VII under 42 U.S.C. § 2000e-3(a) and New Jersey LAD, N.J.S.A. 10:5 *et seq*.  Plaintiff alleges that she was denied the assistant cheerleading coach position for the 2009/2010 season and the affirmative action officer position because she raised the issue of unequal pay for coaches and funding for female athletics programs at the June 2008 Board of Education meeting, filed an EEOC complaint in July 2008, and filed this lawsuit in August 2009.

Title VII protects employees who attempt to exercise their rights guaranteed under the Act against retaliation by employers.  42 U.S.C. § 2000e-3(a).  To establish a *prima facie* case for retaliation under Title VII and New Jersey LAD, a plaintiff must show (1) the employee engaged in a protected activity[2]; (2) the employer took an adverse employment action either after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action. *Abramson v. William Paterson College of New Jersey,* 260 F.3d 265, 286 (3d Cir. 2001).  If the plaintiff is able to establish a *prima facie* case, then the *McDonnell Douglas* burden shifting analysis, as discussed above, is applied. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997); *see also Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997).

Examples of activities that are protected under Title VII include opposing any practice made unlawful by Title VII; making a charge of employment discrimination; testifying, assisting, or participating in any manner in an investigation, proceeding or hearing under Title VII, and filing an

---

[2]    Under New Jersey LAD, the first element requires an employee to show that he or she engaged in a protected activity that is *known to the employer*. *Craig v. Suburban Cablevision, Inc.*, 140 N.J. 623, 629 (1995) (emphasis added).

EEOC complaint. 42 U.S.C. § 2000e-3(a); *see also Woodson,* 109 F.3d at 920. It is undisputed that plaintiff engaged in protected activities such as speaking at the June 2008 board meeting, filing an EEOC complaint in July 2008, and filing this lawsuit in August 2009. However, defendants argue that plaintiff cannot satisfy the second and third elements to establish a *prima facie* case.

As to the second element, plaintiff avers that she was denied the assistant cheerleading coach position for the 2009/2010 and the affirmative action officer position in 2007. Defendants note that plaintiff was denied the affirmative action officer position in September 2007 prior to plaintiff engaging in any protected activities. Because the denial of the affirmative action officer position occurred prior to plaintiff engaging in any protected activities, that denial does not qualify as an adverse employment action. The only adverse employment action that occurred after plaintiff engaged in the aforementioned protected activities is the denial of the assistant cheerleading coach position for fall 2009.

As to the third element, a court must determine if there is a causal link between the denial of the assistant cheerleading coach position and the protected activities. *Woodson,* 109 F.3d at 920. The plaintiff may establish a causal connection by circumstantial evidence such as temporal proximity, a patter of antagonism, and pretext. *Kachmar v. SunGuard Data Sys.*, 109 F.3d 173, 177 (3d Cir. 1997). However, temporal proximity alone is insufficient to support a causal link between the protected activity and the adverse employment action. *Krouse*, 126 F.3d at 503. If temporal proximity is absent, a plaintiff may show a pattern of intervening antagonism or retaliatory animus during the passage of time. *Id*. at 503-04. Moreover, causation is not limited to temporal proximity if other evidence in the record establishes sufficient inferences of a causal connection. *Farrell v. Planter's Lifesavers Co.*, 206 F.3d 271, 279 (3d Cir. 2000). Causation can also be established by

a showing that the employer's reason for termination were vague and inconsistent. *Abramson*, 260 F.3d at 289.

In th present matter, temporal proximity is too remote to establish causation. The plaintiff spoke at the Board of Education meeting in June 2008 and filed an EEOC complaint in July 2008. Thereafter, approximately a year and a half passed from these protected activities to when plaintiff was denied the assistant cheerleading coach position in December 2009. Plaintiff also provided no evidence of intervening antagonism or retaliatory animus by the defendants during that year and a half period. Although plaintiff filed this lawsuit in August 2009, which was only four months prior to the denial of the assistant coaching position, the lawsuit is based on plaintiff's prior claims as discussed at the Board of Education meeting and the EEOC complaint. As to other factors for causation, the record reflects that the plaintiff was previously denied coaching positions since fall 2007 prior to plaintiff engaging in any protected activities. In addition, plaintiff continued to be employed as a teacher, which further negates evidence of alleged retaliation. Plaintiff has also not provided any evidence that the defendants offered inconsistent or vague reasons for denying plaintiff the coaching position. Thus, plaintiff cannot establish a causal link between the protected activity and the adverse employment action.

The plaintiff has failed to establish a *prima facie* case for retaliation, and therefore the Court does not need to conduct a *McDonnell Douglas* burden shifting analysis. The standard for retaliation under New Jersey LAD is the same analysis previously applied to Title VII retaliation claims. *Woodson,* 109 F.3d at 920 (applying the *McDonnell Douglas* burden shifting analysis to federal and state retaliation claims); *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1087-88 (3d Cir. 1996) (finding that New Jersey LAD claims "parallel" Title VII claims). Thus, plaintiff's New Jersey

LAD claim for retaliations fails for the same reasons as the Title VII retaliation claim.  Accordingly, plaintiff's sixth and eighth count for retaliation under Title VII and New Jersey LAD are dismissed as a matter of law.

**C.     Plaintiff's Section 1983 First Amendment Retaliation Claim**

Plaintiff asserts that the denial of the assistant cheerleading coach position was because she attended a Board of Education meeting in June 2008 where she raised the issue of unequal pay and funding between male and female athletics at Monmouth Regional High.  Plaintiff also asserts that she associated with other female employees who voiced similar complaints about the disparities in funding between male and female athletics at the high school.  Plaintiff argues that in denying her the coaching position, defendants deprived her First Amendment right to free speech and freedom of association in violation of 42 U.S.C. § 1983.

To state a claim under Section 1983, a plaintiff must establish that defendants acted under color of state law to deprive plaintiff of federal or constitutional rights.  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999); *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995).  It is undisputed by the parties that Mr. Cleary, Mr. Teeple, and Mr. DeOrio are state actors because they are school administrators of Monmouth Regional High, a public institution.  Next, the court must "identify the exact contours of the underlying right said to have been violated" and then determine "whether the plaintiff has alleged a deprivation of a constitutional right at all."  *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 841 (1998).

A plaintiff may bring a First Amendment retaliation claim under Section 1983 when a state actor retaliates against the plaintiff based on the plaintiff's protected speech.  *Bradshaw v. Twp. of Middletown*, 145 F. App'x. 763, 766-67 (3d Cir. 2005).  To prove a First Amendment

retaliation claim, the plaintiff must demonstrate (1) the speech was protected by the First Amendment because it addressed a matter of public concern; and (2) the protected speech was a substantial or motivating factor in the alleged retaliation against the plaintiff. *Reilly v. City of Atlantic City*, 532 F.3d 216, 224 (3d Cir. 2008). The first factor is a question of law while the second factor is a question of fact. *Gorum v. Sessoms*, 561 F.3d 179, 184 (3d Cir. 2009)(citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006)). If the plaintiff cannot satisfy the first element "the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Garcetti v. Ceballos,* 547 U.S. 410, 418 (2006).

The plaintiff's speech must also be balanced against the government employer's countervailing interest in promoting the efficiency of public services it performs through its employees, known as the *Pickering* balance. *Pickering v. Bd. Of Educ.,* 391 U.S. 563 (1968); *Reilly,* 532 F.3d at 224. If the plaintiff is able to prove these elements then the burden shifts to the employer to prove that the alleged retaliatory action would have occurred absent the protected speech. *See Reilly*, 532 F.3d at 232. The plaintiff may then rebut the employer's rationale by arguing that the discipline imposed was a pretext for retaliation. *Id*.

Defendants argue that plaintiff cannot establish that her speech was protected by the First Amendment because it was not a matter of public concern. Defendants reference the minutes, which provide that plaintiff "expressed her concerns over the recent coaching appointment for fall cheerleading," and that two parents also expressed similar concern for the cheerleading position. Defendants argue that plaintiff only expressed concern over the cheerleading coach appointment for the fall season and her personal employment situation. Defendants further argue that even assuming plaintiff complained about the inequalities facing the cheerleading team and female athletics overall,

18

the plaintiff cannot demonstrate that her complaints at the Board of Education meeting were a substantial or motivating factor in the alleged retaliation against her.

The First Amendment protects a public employee's speech if the employee speaks as a citizen on a matter of public concern. *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). A public employee's speech is a matter of public concern when it relates to an issue of "political, social, or other concern to the community." *Connick*, 461 U.S. at 138. Whether the speech is a matter of public concern can be further "determined by the content, form, and context of a given statement." *Id.* Relevant to this inquiry is the speaker's motivation to determine if the speech was of public concern or personal interest. *Id*. At 149; *see also Versarge v. Twp. of Clinton New Jersey*, 984 F.2d 1359, 1364 (3d Cir. 1993).

Here, the plaintiff has alleged that on several occasions she raised complaints to school administrators about unequal pay for coaches and funding between the male and female athletic programs. The minutes from the Board of Education meeting only provides a brief statement of plaintiff's comment and does not describe whether the plaintiff actually raised issues of public concern as plaintiff alleges. Upon reviewing the facts in the light most favorable to the plaintiff, the plaintiff may have raised issues of public concern regarding unequal pay for coaches and funding for female athletics programs and cheerleading in particular; especially considering plaintiff's prior history of complaints on this same issue. However, even if plaintiff's speech was of a public concern, the plaintiff has not set forth sufficient facts to determine that plaintiff's speech was a substantial or motivating factor for the alleged retaliation. When reviewing evidence in the record and in a light most favorable to the plaintiff, the plaintiff has not established evidence of retaliation. Plaintiff was denied coaching positions since 2006, which was prior to her public speech, and the

only act of retaliation would be the denial of the assistant coaching position in December 2009. Additionally, plaintiff remained employed as a teacher at Monmouth Regional High.  As previously discussed in the Title VII retaliation analysis, the plaintiff was denied coaching positions on several occasions and only once after her public speech, which indicates that the speech was not a substantial or motivating factor in the denial of the assistant coaching position.

Even assuming plaintiff raised a genuine issue of material fact that her speech was  a substantial or motivating factor for alleged retaliation, the burden shifts to the defendant to demonstrate that the alleged retaliatory action would have occurred absent the protected speech. Defendants argue that each year they have recommended the best candidate for the cheerleading coach position.  Defendants further argue that the plaintiff's complaints had no bearing on their decision against hiring her for the coaching position.  In support of their hiring decisions, defendants cite to *Connick v. Myers*, 461 U.S. 138, 151 (1983) where the Court held that the "Government, as an employer, must have wide discretion, and control over the management of its personnel and internal affairs."  The defendants have offered a legitimate rationale that plaintiff was not the best candidate for the coaching job and was denied the position several times prior to her public speech, and denied once after the speech.

To rebut defendants' rationale, plaintiff argues that there was a pretext and relies on the fact that the job was improperly posted and had to be re-posted in December 2009.  This fact does not sufficiently rebut the defendant employer's rationale, nor other evidence in the record that demonstrates that plaintiff was denied coaching positions several times prior to her public speech to establish pretext.  Thus, plaintiff's First Amendment retaliation claim must be dismissed as a matter of law.

**D.**     **Plaintiff's Equal Pay Act Claim**

Plaintiff is seeking damages under the Equal Pay Act, 29 U.S.C. § 206(d)(1) based on assertions that male coaches received higher salaries and annual increases than female coaches for performing comparable work.  Defendants argue that plaintiff's Equal Pay Act claim is time barred by the applicable statute of limitations.

The statute of limitations for an Equal Pay Act claim is set forth in the statute as two years from when the cause of action accrues, and three years for a willful violation.  29 U.S.C. § 255(a).  In this Circuit, sex based discriminatory wage payments constitute a "continuing violation" of the Equal Pay Act, but the timeliness of an Equal Pay Act claim is measured from the date of an aggrieved employee's last paycheck.  *Carenas v. Massey*, 269 F.3d 251, 257 (3d Cir. 2001); *Miller v. Beneficial Mgmt. Corp*., 977 F.2d 834, 843-44 (3d Cir. 1992).  Defendants assert that plaintiff received her last paycheck as a cheerleading coach on February 28, 2005 for the spring season.  Accordingly, the plaintiff has not timely filed an Equal Pay Act claim since her complaint would need to have been filed, at the latest, by February 28, 2008 to assert a willful violation.  However, the plaintiff filed her first complaint in this Court on August 22, 2009.  Plaintiff did not oppose defendants' arguments as to the dismissal of this count.  Accordingly, the Court will not address the merits of plaintiff's Equal Pay Act claim.  Thus, plaintiff's Equal Pay Act claim is time barred and is dismissed as a matter of law.

**III.    CONCLUSION**

For these reasons, defendants' motion for summary judgment is granted.

**ORDER**

It is on this 16th day of March, 2012:

ORDERED that defendants' motion for summary judgment is GRANTED (ECF No. 19);

and it is further

ORDERED that the Clerk is directed to close this case.

_s/Peter G. Sheridan_____
PETER G. SHERIDAN, U.S.D.J.

22